Appellant was convicted of murder in the second degree and his punishment assessed at twenty-one years confinement in the penitentiary.
The killing occurred at a negro ball. The deceased was a Mexican. There seems to have been no unfriendliness between the parties until a short time before the homicide. The evidence for the State fully supports the finding of the jury. There was evidence on the part of the appellant raising the issue of self-defense. The court charged upon the issue of manslaughter, as well as murder and self-defense. The court was requested, but refused, to charge the jury that if the evidence showed the negro woman, Celie Wright, or the negro woman, Annie Ricard, complained to defendant of any act committed by deceased, the defendant had the right to go to the deceased in a peaceable manner and inquire of him as to such acts and in so doing the defendant would not in any manner abridge his right of self-defense; and if the deceased then advanced on the defendant with a knife in a manner, judging the situation from the defendant's standpoint, that caused defendant to believe that he was about to be cut or stabbed by the deceased, then defendant would have had the right, under these circumstances, to act in self-defense. We do not believe this charge was called for by the facts. The only evidence that we find in this connection, as we understand the record, is about as follows: About 12 or 1 o'clock at night Bill McMeans was at his wagon near the ball; had taken out and fed his mules, and Annie Ricard was out at the wagon and the Mexican was talking to her. She said to the negro, McMeans: "Uncle Bill, I am scared of Antonio." The defendant was not present, but came up shortly afterwards and told Antonio to let the woman alone. The Mexican replied that he thought he was a friend to him. Appellant said "Yes," he was a friend to him, and then McMeans told appellant to go back into the house and not be saying anything to the Mexican because he, McMeans, thought the Mexican was drunk. In fact, it seems that the Mexican was drinking. Defendant was in the house when Antone was talking to the woman and did not know what the deceased said to her. Appellant then went back into the house and the deceased asked McMeans for a match, and *Page 197 
leaned up against him and said, "Bo-darkee, Claud no friend to me, I cut hees damd haid off." McMeans said let him alone, he is not going to do anything to you, and deceased went on into the house and was getting a cup of coffee. It was claimed by the appellant that at the time the Mexican made this remark to McMeans he had a knife in his hand, and also had a knife in his hand when he made the threats. This threat was made a few minutes before McMeans went into the house. We do not believe this evidence calls for the requested instruction. Appellant did not seek an explanation of the deceased's conduct as we understand this record.
Error is also assigned upon the failure of the court to charge upon the law of threats. The testimony in regard to threats is as above detailed. This threat, if made, was not communicated to appellant. It was, therefore, unnecessary for the court to charge the law of threats as applied to the issue of self-defense.
There is an affidavit attached to the motion for new trial which shows in substance that the jury retired about 5 o'clock in the afternoon to consider of their verdict. About 8 o'clock, or perhaps 8:30, the jury came into the courtroom and asked to be relieved from further consideration of the case during the night. The court refused to grant the request. In other words, he told them that he desired them to consider of their verdict during the night; that he had received notification of the death of a near relative, and desired to leave on the next morning's train to attend the funeral services of the relative. This train left about 8:50 the following morning, and he informed them if they did not arrive at a verdict by that time some other arrangement would have to be made. Appellant was not present, nor was his counsel when this matter occurred between the court and the jury. The verdict was returned the next morning and before the judge left on the train. It is insisted that this is a violation of article 733, Code Criminal Procedure, and of such a character as requires a reversal of the judgment. We are of opinion that the facts do not show a violation of the statute, but if so, it is not of sufficient moment to require a reversal. A similar question came before this court in Wilkerson's case,49 Tex. Crim. 170. We think what was said in that case is applicable to this case. Under the authority of that holding, we are of opinion there was no such reversible error shown as requires a reversal. We have not gone into a detailed statement of the facts because we deem it unnecessary. The issues, murder in the second degree, manslaughter and self-defense, were appropriately and correctly submitted to the jury, and there is ample evidence in the record to sustain the finding of the jury.
Finding no reversible error in the record, the judgment is affirmed.
Affirmed. *Page 198